## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01801-COA

**EARL ROSS AND MAXCINE ROSS**                                  **APPELLANTS**

**v.**

**SHELLIE R. STEWART**                                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/16/2015 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES E. MILLER |
| ATTORNEYS FOR APPELLEE: | W. STEWART ROBISON |
| | MICHELLE WROTEN VAN NORMAN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | REPLEVIN GRANTED; COUNTERCLAIM DISMISSED WITHOUT PREJUDICE |
| DISPOSITION: | AFFIRMED - 04/25/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., CARLTON AND WESTBROOKS, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Shellie R. Stewart filed a complaint for replevin of a mobile home in the possession of Earl and Maxcine Ross ("Rosses"). The Rosses filed a counterclaim alleging, among other things, breach of contract. The Circuit Court of Pike County dismissed the Rosses' counterclaim and scheduled a trial on the replevin action. The court granted the replevin and awarded possession of the mobile home to Stewart. The Rosses now appeal. After our review of the record, we affirm the judgment of the circuit court.

### FACTS AND PROCEDURAL HISTORY

¶2.    Genevieve Ross[1] owned a mobile home with her husband, Felder Ross, as joint tenants. She filed paperwork conveying title of the mobile home to herself following her husband's death. Stewart[2] purchased the title of the mobile home from Genevieve. The Rosses rented the mobile home from Genevieve for approximately five years. The Rosses contend they entered into an oral agreement with Stewart to purchase the mobile home for cash. Maxcine Ross testified that Stewart offered to sell the mobile home, at the price of $42,000 payable in monthly installments of $600 per month, without interest, provided full payment was received within one year. However, if it was not paid within one year, the price would increase to $52,000, with no interest charged. At trial, Stewart testified he was willing to sell, until the Rosses asked Stewart to finance the purchase of the home to allow them to pay rent. Stewart also testified that the Rosses wanted him to pay $300 dollars per month to keep the mobile home on their land, because Stewart was not legal owner of the land. However, Stewart rejected this agreement as well. Stewart and the Rosses testified that no money was ever paid to Stewart for the mobile home.

¶3.    Stewart filed a complaint for replevin against Earl Ross. Earl filed his response, defenses, and a counterclaim alleging breach of fiduciary duties, breach of contract, breach of implied covenants of good faith and fair dealing, fraudulent misrepresentation and/or omission, negligent misrepresentation and/or omission, unconscionability, emotional distress,

---

[1] In the record, Stewart refers to Genevieve as the Rosses' "aunt."

[2] Stewart and Earl Ross are first cousins.

and conspiracy. Earl also moved to add Genevieve and Webster Chess[3] to the cause of action.

¶4.     Stewart filed his answer, and Maxcine, Earl's wife, was added as a party defendant to the action. The circuit court ordered the parties to brief the issue of whether the Rosses' counterclaim could be entertained by the court at trial. The circuit court dismissed the counterclaim *without prejudice* and cited *Finance America Private Brands Inc. v. Durbin*, 370 So. 2d 1356 (Miss. 1973), holding that damages must be sought after judgment on the issue of possession and not by way of a counterclaim. Additionally, the circuit court found that the Rosses could file their action following the court's decision on possession.

¶5.     Although the circuit court ruled that there was no jurisdiction over the Rosses' counterclaim, the court allowed the Rosses to present their defense of breach of contract. Finding no binding agreement between Stewart and the Rosses, the circuit court found that Stewart properly obtained title of the mobile home and granted the replevin. The Rosses were ordered to vacate the mobile home immediately. Stewart was given seventy-two hours to retrieve the mobile home from its location, because it was determined that Stewart did not own the land on which the mobile home was located. Additionally, after the circuit court dismissed their counterclaim, the Rosses filed a complaint in the County Court of Pike County alleging five of the seven original claims contained in the counterclaim against Stewart, Genevieve, and Chess.

---

[3] Chess was a rebuttal witness. He testified that Earl stated he was not paying any money to Stewart for the mobile home. Stewart stays with Chess when he is in town. Chess also grew up with both Earl and Stewart, and lived close to the Rosses during the trial.

## STANDARD OF REVIEW

¶6. "Jurisdiction is a matter of law, which is reviewed de novo." *Magee v. Covington Cty. Bank*, 119 So. 3d 1053, 1056 (¶10) (Miss. Ct. App. 2012) (quoting *Entergy Miss. Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1204-05 (¶5) (Miss. 1998)).

## DISCUSSION

**Whether the trial court erred in declining to accept jurisdiction of the counterclaim filed in response to the complaint in replevin.**

¶7. Before the adoption of the Mississippi Rules of Civil Procedure (effective January 1, 1982), the Mississippi Supreme Court held that "after a careful consideration of the office of replevin, we have reached the conclusion that the Laws of 1975, ch. 508, do not permit a defendant to file a counterclaim or recoupment except for the specific statutory damages." *Gen. Motors Acceptance Corp. v. Fairley*, 359 So. 2d 1386, 1388 (Miss. 1978). "A replevin action is a possessory action for specific property and not a suit for monetary damages." *Id*. "No provision is made under the above law for a judgment of money, except for the wrongful taking, detention, value of the specific property, or damages for wrongful suing out of the writ." *Id*.

¶8. Now, we acknowledge that Mississippi Rule of Civil Procedure 13 allows the court to consider compulsory and permissive counterclaims:

> (a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. But the pleader need not state the claim if:

4

(1) at the time the action was commenced the claim was the subject of another pending action; or

(2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13; or

 . . . .

(b) Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

¶9. The Rosses rely on *Hall v. Corbin*, 478 So. 2d 253 (Miss. 1985), to support their assertion that their counterclaim should not have been dismissed. This Court has previously recognized the doctrines of ancillary and pendent jurisdiction. In *Hall,* the supreme court held:

We (and every other court in the land) have long held that once a court acquired actual subject matter jurisdiction of an action, other claims (whether asserted by the one or more of the original parties or by new or intervening parties), ancillary or pendent to the original claim could also be litigated in that action even though the ancillary or pendent claim standing alone may have been beyond the court's jurisdiction.

*Caterpillar Fin. Servs. Corp. v. Burroughs Diesel Inc.*, 125 So. 3d 659, 674 (¶88) (Miss. Ct. App. 2013) (quotation marks omitted) (quoting *Hall*, 478 So. 2d at 255).

¶10. This Court has also held that "in future similar actions, it would be preferable for such a dispute as this one to be determined in one court proceeding." *Id.* We agree with this Court's previous ruling; however, this case presents a unique set of facts. The circuit court held a hearing to determine whether the Rosses' counterclaims were viable, and the circuit court held that the claims could possibly be brought after the issue of replevin. Further, after

5

the circuit court dismissed the allegations in their counterclaim without prejudice, except to the extent asserted as "legal defenses to the issue of replevin," the Rosses filed a complaint in the county court alleging five of the seven original claims contained in the counterclaim against Stewart, Genevieve, and Chess.

¶11. The circuit court held that whatever matters occurred during the replevin action did not affect the Rosses' counterclaim. Thus, the circuit court concluded that the counterclaim was not considered a compulsory counterclaim under Rule 13. We disagree with the lower court's ruling that the counterclaim did not fall under Rule 13. The Mississippi Supreme Court has held that "the face of the complaint and its well pleaded allegations are what courts look to when deciding whether they have authority to act at all . . . ." *City of Durant v. Humphreys Cty. Mem'l Hosp./Extended Care Facility*, 587 So. 2d 244, 250 (Miss. 1991) (citations omitted); *see also* Miss. Const. art. 6, § 159(a) & (f).

¶12. In following precedent, we acknowledge that where a court is presented with a counterclaim, and the defendant raises a defense akin to the same counterclaim, the circuit court should exercise jurisdiction over the counterclaim.

¶13. However, while we find that the trial judge erred in dismissing the counterclaim, we find the circuit court corrected its error by hearing the facts and making a ruling regarding the Rosses' counterclaim addressing the formation of a contract and any assertions related thereto. The following is an excerpt from an exchange during the bench trial:

MR. MILLER:     You Honor, I guess I'm not clear. Did the Court dismiss the counterclaim?

THE COURT:     I dismissed the counterclaims without prejudice except

6

to the extent that they go directly to a defense to the replevin. And in the most liberal sense of the situation, I suppose, Mr. Robison, this perhaps purports to be a defense to the replevin, so I'll allow him to proceed somewhat further into this line of questioning. Go ahead, Mr. Miller.

MR. MILLER: Two notes, Your Honor. On the first note, as one of our defenses we argued breach of contract in our defense. So can I argue my defenses or am I excluded also from arguing my defense?

THE COURT: No. Mr. Miller, I just ruled for you.

MR. MILLER: I'm sorry?

THE COURT: I just ruled in your favor.

MR. MILLER: I just want to make the Court – make sure the Court won't limit me –

THE COURT: I mean, I can't – I can't overrule his objection any more than I just did and say it goes – in fact, your client understood it because she was shaking her head yes.

¶14. Mr. Miller proceeded to cross-examine Stewart, and the circuit court heard testimony regarding the alleged contract between Stewart and the Rosses. Stewart testified to his conversation where he decided not to enter into an agreement with the Rosses. The following is an excerpt of Stewart's testimony during cross-examination:

So, so when the I – I told Mr. Ross, I said, I rather you have the – buy the motor home. I said, do you want to buy it. He says, let my pray over it, let me talk to my wife. I said, okay. So, I guess he talked to her and he prayed over it. He didn't call me back. So, I called him I believe it was on a Friday. I said, what have you decided. He said, we, I wouldn't mind having the motor home, he said, I want that motor home in that spot cause my mother and daddy have it, but I don't have the money to finance it. And so I said, well, maybe we could make some kind of arrangement. He said, how much you want it for again? And I said – I told him, I said, if you give me some cash right now, I'll

7

sell it to you for $50,000. He said, we can't do it. He said, you would finance for it for, I think about three to five years. I said, well, I can – I can look at that, you know what I mean. So I said – he said, how much I got to pay if – if you finance it. I said $600 a month. And then he said, yes, he said, I can handle that. He said, but the crossroads. He said, I'm going to charge you $300 a month just for the mobile home sitting on the property while I'm renting it. I said, oh, no, I don't need to talk to you.

Further, Stewart testified to the following:

Q:     Mr. Stewart, isn't it correct you actually called the Rosses and explained to them that you were offering the mobile home for $600 a month at $42,000? Is that correct?

A:     No, sir.

¶15.   The following is an excerpt of Maxcine's testimony:

Q:     And when did you have an opportunity to discuss . . . the purchase of the mobile home with Shellie Stewart?

A:     Mr. Stewart called us around August 8. And we spoke – he called our home phone. We have trouble out in that area with the home phone, so it will either cut off or you don't get to speak to the person. So we've asked that he called the cell phone.

        . . . .

A:     The very first time was around April – I'm sorry – August 8. And then August 13 he called again and submitted the deal that he offered us to purchase the home in the amount of the $42,000. And at the time he said, well, talk it over with your wife and see what she thinks about it and how she agrees with it and get back to me. And we did.

Q:     And did you tell him that you would agree? Did you communicate the agreement to Stewart or did Mr. Ross?

A:     Mr. Ross, my husband, conveyed the information back to Mr. Stewart. He told us to get a few days – take a few days after August 13 to see about getting financed. Which we did, and no one is doing any financing on mobile homes. So – especially when there are private owners.

8

. . . .

A: We waited approximately two weeks. And by the – around or approximately around August 31, Mr. Stewart called our home phone once again and he spoke to my husband. And he told him at that time he could not let us have the deal because his adviser had advised him that he would be losing too much money. And so at that particular time he reneged on the deal.

¶16. The circuit court found the testimony given by Stewart and the Rosses proved that there was no meeting of the minds, no binding agreement, no contract.

¶17. Further, the same evidence the Rosses relied on in support of the defense of breach of contract would have been the same evidence to support the counterclaim. Accordingly, before there can be a breach, there must be a contract. The counterclaim was based on the Rosses' assertion that there was a contract – a claim which the circuit court found meritless. The court heard the discrepancy of evidence from both sides regarding breach of contract and any other claim alleged by the Rosses.

¶18. The only way to determine possession would be to consider whether the Rosses may be entitled to possession, because Stewart breached his contract to sell his mobile home. The circuit court agreed with this assertion. It is clear from the record that the circuit court considered whether Stewart and the Rosses contracted and whether there was a breach that followed. In other words, if the court believed that there was a contract and a subsequent breach of contract, it would not have granted the replevin. Absent a jury, the circuit court judge was the trier of fact, and concluded that no contract existed between the parties. The supreme court has held that "conflicting testimony is to be resolved by the trier of fact, the judge in a bench trial." *Tabitha Prayer v. Greenwood Leflore Hosp.*, 183 So. 3d 877, 883

(¶19) (Miss. 2016) (citation omitted).

¶19. This Court must also note that "it is, of course, a basic principle of the law of contracts that a contract is not formed between the parties absent the essential elements of offer, acceptance, and consideration." *Whiting v. Univ. of S. Miss.*, 62 So. 3d 907, 915 (¶14) (Miss. 2011) (citations omitted). Therefore, even if the Rosses and Stewart entered into some form of an agreement regarding sale of the mobile home, there was no consideration paid, because the Rosses never paid rent to Stewart.

¶20. The dissents writes, "a claim for replevin asks for immediate possession of personal property." (Citing Miss. Code Ann. §§ 11- 37-101 & 11-37-141 (Rev. 2012)). The right of the possession requires the court to consider ownership of the personal property. Likewise, a replevin action can be decided only after the court determines who owns the property, whether any liens are due on the property, and whether any other person(s) have a legal right to claim as to the property. We agree. Accordingly, we find that the trial court concluded that Stewart was the legal owner of the mobile home.

¶21. Although the trial judge initially erred by declining jurisdiction over the Rosses' counterclaim, we find that the trial judge later exercised jurisdiction over the Rosses' counterclaim by allowing testimony regarding the existence of a contract and an alleged breach. Accordingly, in future and similar actions, we encourage trial courts to hear viable counterclaims accompanied with a replevin action to ensure judicial economy.

¶22. **THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING, P.J., AND CARLTON, J., CONCUR. GREENLEE, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. FAIR, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, ISHEE, FAIR AND WILSON, JJ.**

**GRIFFIS, P.J., DISSENTING:**

¶23. I respectfully disagree with the majority and dissent.

¶24. On October 26, 2015, as the trial began, the circuit court dismissed the Rosses' counterclaims without prejudice. The trial judge ruled:

> All right, well, I have a ruling on the counterclaims and they are hereby dismissed without prejudice.
>
> Clearly, the case law states as in *Finance America v. Durbin* at 370, 1356 [sic], damages must be sought after judgment on the issue of possession and not by way of counterclaim. Clearly, the law of replevin simply does not allow - - now, the counterclaims are dismissed, except as to the extent that they are legal defenses to the issue of replevin. But as far as the claims on their own which go forward in opposition to the replevin, they are dismissed without prejudice.

¶25. The majority refers to *Durbin*, but does not acknowledge that it was decided before the Rules of Civil Procedure governed. I admit my confusion with the majority's ruling that it was legally proper for the Rosses' counterclaims to be dismissed but to allow the Rosses to present their defense of breach of contract. The majority does not rely upon *Durbin* and does not attempt to argue how the circuit court was correct to apply it here.

¶26. Instead, the majority refers to a supreme court ruling that occurred before the Mississippi Rules of Civil Procedure were adopted. *See Gen. Motors Acceptance Corp. v. Fairley*, 359 So. 2d 1386 (Miss. 1978). The majority cites the following from the opinion, "[a]fter a careful consideration of the office of replevin, we have reached the conclusion that

11

the Laws of 1975, ch. 508, do not permit a defendant to file a counterclaim or recoupment except for the specific statutory damages." Maj. Op. at (¶7) (citing *Fairley*, 359 So. 2d at 1388). It should be noted that, in *Fairley*, the next two sentences read:

> A replevin action is a possessory action for specific property and not a suit for monetary damages. No provision is made under the above law for a judgment of money, except for the wrongful taking, detention, value of the specific property, or damages for wrongful suing out of the writ.

*Fairley*, 359 So. 2d at 1388. This is no longer true. Under the Mississippi Rules of Civil Procedure, a defendant may assert either a compulsory or a permissive counterclaim.[4] It certainly appears to me that the Rosses' counterclaims would be compulsory, because they "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim." M.R.C.P. 13(a).

¶27.     Neither *Durbin* nor *Fairley* is governing authority here. Both of these cases were decided before the Mississippi Rules of Civil Procedure were adopted. By order dated May 26, 1981, the Mississippi Supreme Court adopted the Mississippi Rules of Civil Procedure (effective January 1, 1982). Mississippi Rule of Civil Procedure 1 provides:

---

[4] Mississippi Rule of Civil Procedure 13 provides:

(a) Compulsory Counter-claims. A pleading shall state as a counter-claim any claim which at the time of serving the pleading the pleader has against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. . . .

(b) Permissive Counter-Claims. A pleading may state as a counter-claim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

12

> These rules govern procedure in the circuit courts . . . in all suits of a civil nature, whether cognizable as cases at law or in equity, subject to certain limitations enumerated in Rule 81; however, even those enumerated proceedings are still subject to these rules where no statute applicable to the proceedings provides otherwise or sets forth procedures inconsistent with these rules. *These rules shall be construed to secure the just, speedy, and inexpensive determination of every action.*

(Emphasis added). First, Rule 81 does not exclude replevin actions from the Mississippi Rules of Civil Procedure. Second, a claim for replevin asks for immediate possession of personal property. Miss. Code Ann. §§ 11-37-101 & 11-37-141 (Rev. 2012). It requires the court to consider the ownership of the personal property. The Rosses' counterclaims challenged whether they had any rights to the property. There is no need for a second action when, under Rule 1, we are instructed to construe the rules "to secure the just, speedy and inexpensive determination of every action." It only makes sense that all such claims should be brought in one action under the Mississippi Rules of Civil Procedure.

¶28. The majority cites *Caterpillar Financial Services Corp. v. Burroughs Diesel, Inc.*, 125 So. 3d 659, 659 (¶1) (Miss. Ct. App. 2013). In that case, there were two lawsuits between the same two creditors for possession and the right to sell a Caterpillar excavator. This Court acknowledged that:

> To this point, the procedural nature of these cases seems to be contrary to the purpose of the replevin statute and the Mississippi Rules of Civil Procedure. The claims have been litigated separately, before three different courts. The replevin claim is on appeal from a final judgment, and the mechanic's lien claim is an appeal of a summary judgment. These cases have been consolidated before this Court.

*Id.* at 665 (¶43) (footnotes omitted). We recognized that two parties claimed the right to possess the personal property. Cat Financial's claim was through a replevin action; and

13

Burroughs's claim was through a mechanic's lien. This Court found reversible error in the different decisions. Interestingly, three years ago, this Court instructed that *"[i]n future similar actions, it would be preferable for such a dispute as this one to be determined in one court proceeding."* *Id.* at 674 (¶90). The majority acknowledges and agrees with this language, but says the facts here are "unique." They are not.

¶29. The majority also cites *Hall v. Corbin*, 478 So. 2d 253, 254 (Miss. 1985).[5] There, the supreme court framed the issue before the court as:

> This case presents issues involving the scope of jurisdiction and available remedies in circuit court ancillary to a replevin action now that we are under the Mississippi Rules of Civil Procedure. In the end we hold that in such an action, a claim by another party asserting a non-possessory interest in the property may be asserted within the ancillary jurisdiction of the circuit court, so long as there is a common nucleus of operative fact between such claim and the original complaint in replevin. Such party may intervene in the circuit court replevin action, even though his claim is of equitable origins.

The court then ruled:

> We (and every other court in the land) have long held that once a court acquired actual subject matter jurisdiction of an action, other claims (whether asserted by the one or more of the original parties or by new or intervening parties), ancillary or pendent to the original claim could also be litigated in that action even though the ancillary or pendent claim standing alone may have been beyond the court's jurisdiction. To fall within pendent or ancillary jurisdiction, the intruding claim must arise out of the same transaction or occurrence as the principal claim or, as others put it, out of a common nucleus of operative fact. The principal context in which we have recognized these notions is that where "legal claims" have been asserted in chancery court, pendent to the principal equity claim. There is no reason or principle why the converse should not also be true: *where a circuit court has jurisdiction of an action at law, it may hear and adjudicate in that action all claims, including those with an equitable smell, arising out of the same transaction and*

---

[5] We considered the same language from *Hall* in our discussion of ancillary and pendent jurisdiction in *Caterpillar*, 125 So. 3d at 654 (¶¶88-89).

*occurrence as the principal claim*. Indeed, the converse would appear even more appropriate in that our circuit courts are courts of general jurisdiction, Miss. Const. art. 6 § 156 (1890), while our chancery courts are regarded as courts of special or limited jurisdiction.

(Internal citations omitted) (emphasis added). Thus, in *Hall*, the court allowed a third party to intervene and join claims under Mississippi Rules of Civil Procedure 18 and 24. The court reasoned:

> In this view we hold that the claim of intervenor . . . as originally filed and as revived was within the jurisdiction of the circuit court ancillary to the original action in replevin. This holding does not depend upon any enlargement of jurisdiction effected by the MRCP, for those rules neither pretend to nor have power to enlarge jurisdiction. Rule 82(a), MRCP. *These rules at most sweep away procedural barriers to the assertion of claims otherwise within the court's jurisdiction.*

*Hall*, 478 So. 2d at 255-56 (emphasis added). The court concluded:

> *Once intervention is permitted under the rules, it follows that intervenors may join as many claims as they have against the opposing party*. Rule 18, MRCP. By virtue of the familiar concepts of ancillary or pendent jurisdiction, it does not matter that some of the claims sound in equity. We have recognized on many occasions that under the rule, circuit courts may be called upon to grant equitable relief where such claims are ancillary to the civil actions in law in order "to secure the just, speedy and inexpensive determination of every action." Rule 1, MRCP.

*Hall*, 478 So. 2d at 257 (internal citation omitted) (emphasis added).

¶30. This case was commenced under the Mississippi Rules of Civil Procedure. All necessary parties were before the court. The possession of the mobile home was at issue through a claim for replevin. The Rosses sought to adjudicate their counterclaims for breach of contract, among other claims. The supreme court determined in *Hall* that a third party could intervene and join a claim in a replevin action; thus, I see no legal authority for the

15

circuit court or the majority to decline jurisdiction over both the replevin claim and all counterclaims asserted.

¶31.    The majority cites no legal authority for its decision to affirm the trial judge's decision to decline jurisdiction.  The majority affirms the trial court because it apparently believes that the judge actually considered the Rosses' counterclaim for breach of contract[6] and decided that there was not a contract.  At the end of the trial, the judge said:

> Frankly, this is not a difficult case, ladies and gentlemen.  I mean . . . he's got a title.  He testified that he paid for it.  There may have been some talk about a contract.  And, again, maybe there is a contract and maybe you have an action for breach of contract . . . .  I'm not saying that you do or you don't.  It's just a separate action that has to be maintained.

The trial judge's own words clearly refute the notion that the Rosses' counterclaims were actually considered by the trial judge and the dismissal was nothing but harmless error.

¶32.    I find it was reversible error as a matter of law for the circuit court to decline jurisdiction over the counterclaims.  I would reverse and remand this case for further proceedings.  I therefore respectfully dissent.

**BARNES, ISHEE, FAIR AND WILSON, JJ., JOIN THIS OPINION.**

---

[6] The majority does not discuss the Rosses' right to a jury trial on their breach-of-contract claim and does not discuss the fact that the trial court did not consider or allow evidence on the Rosses' other claims for breach of fiduciary duties, breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, negligent misrepresentation, unconscionability, emotional distress, or conspiracy.